THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
HERBERT F. MENDE, Defendant-Appellant.

Second District   No. 2—89—1126

Opinion filed December 28, 1990.—Rehearing denied February 4, 1991.

Aldo E. Botti and Howard R. Wertz, both of Botti, Marinaccio, De Salvo & Tameling, Ltd., of Oak Brook, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Herbert Mende, was convicted of second-degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a)(2)) and sentenced to five years' imprisonment. On appeal, he argues that his sentence should be reduced. We affirm.

The defendant was convicted by a jury of the first-degree murder of James Slenger. By agreement of the State and the defendant, the conviction was vacated. After a stipulated bench trial using the evidence from the jury trial, the court entered a verdict of guilty of second-degree murder. Following a hearing, the defendant was sentenced to five years' incarceration. The trial court subsequently denied his motion to reduce the sentence, and he brought this appeal.

Evidence at the jury trial and sentencing hearing established that at about 12:30 a.m. on December 19, 1988, the victim, who lived in the same neighborhood as the defendant, walked up to the defendant's house and began pounding loudly on the front door. The defendant, his wife, his stepson, and stepdaughter had already gone to bed. The defendant's stepdaughter, whose bedroom was nearest the front door, heard the pounding and became afraid that somebody might be trying to break into the house. She ran into the defendant's bedroom and woke up the defendant and his wife. The defendant put on his pants, took a shotgun out of a case, and loaded the gun. According to his testimony at the hearing, he first fired a warning shot into the floor of his bedroom; when the pounding and rattling at the front door continued, the defendant went into the kitchen, where he looked out a window and saw the figure of James Slenger. The defendant did not know Slenger. Without turning on the front light or calling out to Slenger, the defendant fired two shots at Slenger through the locked front door. After telling the rest of his family to call the police, the defendant then opened the front door and shot Slenger in the back from a distance of three to four feet. The defendant testified at the sentencing that he had no idea whether Slenger was armed and could not tell whether Slenger was facing him at the time. Testimony from law enforcement officers at the jury trial established that Slenger was unarmed, had no burglary tools, and made no discernible attempts at forced entry. Apparently his presence at the defendant's door was the result of his having become intoxicated at a Christmas party the previous evening. The two shots that the defendant fired through the door wounded Slenger in the elbow; after Slenger turned away from the house in pain, the defendant opened the door and fired the fatal shot into Slenger's back.

At the sentencing hearing, the trial judge heard testimony about the incident from the defendant, his wife, and his stepchildren. Members of the defendant's family, as well as a number of friends, co-workers, and supervisors, testified to the defendant's peaceable disposition, honesty, kindness, and responsibility. Without objection, the State also introduced victim impact statements from members of James Slenger's family. The State requested a sentence of 10 years' imprisonment, and the defendant requested probation. The trial judge, stating that probation would deprecate the seriousness of the offense, imposed a sentence of five years' imprisonment. The trial judge emphasized that in his view "the polestar fact of the case is the act of shooting through after opening the door and seeing the person lying on the ground," and that "no reasonable person should do what Mr. Mende did *** it could have been a woman who was just raped, knocking at the door, trying to get aid. It could have been a relative. It could have been his son coming home."

At the hearing on the defendant's motion to reduce the sentence, the defendant argued that the trial judge had based the sentence on the erroneous assumption that the victim was lying on the front stoop when the defendant fired the fatal shot. The trial judge explained that he had not been using the term "lying" literally and that the crucial consideration was that the defendant shot Slenger after Slenger had already been wounded and disabled, was turning to leave, and could no longer reasonably be considered a threat. The trial judge stated that he also considered the impact on the family of the victim, "what justice should convey to the general public as part of a criminal proceeding," and all other factors that he was required to consider at a sentencing hearing. The trial judge denied the motion to reduce the sentence, and the defendant appealed.

■ The defendant argues first that his sentence must be reduced because it was based on the trial judge's erroneous assumption that the defendant fatally shot Slenger as the latter was lying on the front stoop. The defendant maintains that this mistaken assumption concerned a key fact going to the issue of the defendant's state of mind and reasonableness in shooting Slenger. However, it is abundantly clear that the crux of the trial judge's reasoning was that the defendant, having already shot Slenger through the door, needlessly and unreasonably opened the door to shoot Slenger after Slenger was no longer even an apparent threat to the defendant or the defendant's home. The trial judge concluded that, even though the victim was standing rather than lying on the stoop at the time of the fatal shot, the defendant's actions were grossly disproportionate to the circum-

stances. We find no reversible error in this reasoning.

■ The defendant next contends that the trial court erred in admitting and considering victim impact statements from members of James Slenger's family. The defendant argues that the statements contain erroneous information and were prepared by the family members, then sent to the State's Attorney's office, rather than being "prepared in writing *in conjunction* with the Office of the State's Attorney" prior to the sentencing hearing as required by statute. (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 38, par. 1406.) The defendant, however, agreed to the admission of these statements and in fact used one such statement as his own exhibit. Even assuming that this argument is not waived, and further granting the defendant's speculative assertions as to how the statements were prepared, the statute was satisfied as the State's Attorney's office received the statements, was able to review them before the hearing, and introduced them at the hearing. (*People v. Israel* (1989), 181 Ill. App. 3d 851, 863-64.) Also, the defendant has not shown any prejudice from the introduction of the statements.

■ The defendant next contends that the trial judge erred in considering the death of the victim as an aggravating factor. However, the record shows that although the trial judge did consider the fact that the offense here was a murder in concluding that probation would deprecate the seriousness of the offense, he did not consider the death of the victim as a factor in aggravation.

■ Finally, the defendant argues that he should receive probation, or at the most the statutory minimum of four years' imprisonment, because he has no prior criminal history, imprisonment would work hardship on his family, and a prison term is not necessary to restore him to useful citizenship. The consideration of these factors is for the trial judge's discretion, and a reviewing court may not reduce a sentence absent an abuse of that discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) We cannot say that the trial judge abused his discretion in imposing a sentence near the statutory minimum, based on his opinion that probation "would deprecate the seriousness of the offender's conduct" (Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—1(2)). We therefore find no error.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

REINHARD and DUNN, JJ., concur.